IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEKREMA SPAHIC, | ) |
| | ) |
| Plaintiff, | ) No. |
| | ) |
| VS. | ) Judge |
| | ) Magistrate Judge |
| GAYLORD ENTERTAINMENT COMPANY, | ) JURY DEMAND |
| d/b/a GAYLORD OPRYLAND RESORT & | ) |
| CONVENTION CENTER, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

For her Complaint against defendant Gaylord Entertainment Company, d/b/a Gaylord Opryland Resort & Convention Center ("Gaylord"), plaintiff states:

### IDENTIFICATION OF THE PARTIES

1. Plaintiff is a resident of Antioch, Davidson County, Tennessee, and a former employee of defendant Gaylord.

2. Defendant Gaylord is a Delaware corporation with its principal place of business in Nashville, Davidson County, Tennessee. Defendant Gaylord may be served with process through its registered agent, Carter R. Todd, 1 Gaylord Drive, Nashville, Tennessee 37214. At all times material hereto, defendant Gaylord employed more than 15 employees.

### JURISDICTION AND VENUE

3. This is an action for damages and equitable relief for unlawful employment practices brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and the Americans with Disabilities

Act, as amended, 42 U.S.C. § 12101, *et seq*., ("ADA"). The Court has jurisdiction under 28 U.S.C. §§ 1331.

4. Plaintiff filed a timely charge of discrimination with the Tennessee Human Rights Commission ("THRC") and Equal Employment Opportunity Commission ("EEOC") and, following the EEOC's finding and determination that Gaylord harassed, intimidated and discharged plaintiff in retaliation for her opposition, complaints and other activity protected under Title VII and the ADA, plaintiff received a Notice of Right to Sue ("Notice") from the EEOC dated June 6, 2012.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because the acts giving rise to this Complaint occurred in an area embraced within the Nashville Division of the Middle District of Tennessee.

## FACTUAL AVERMENTS

6. On March 25, 1999, plaintiff became employed with defendant Gaylord as an in-room dining server. On May 1, 2000, plaintiff transferred to a cocktail server position in defendant Gaylord's Jack Daniel's Saloon and, on February 24, 2002, plaintiff transferred to a server position in defendant Gaylord's Ristorante Volare.

7. In or about September, 2007, plaintiff was yelled at by a bartender at Ristorante Volare because the bartender took issue with the amount of tips that plaintiff had "tipped out" or shared with him.

8. Plaintiff's assistant general manager, Josh Hesse, questioned plaintiff about the exchange, and she attempted to explain that she was not at fault and had not incited the bartender's anger. However, Mr. Hesse was not supportive of plaintiff, even though she was in tears over the event.

9. Defendant Gaylord does not have a policy regarding how much servers must "tip out" to bartenders.

10. Mr. Hesse later verbally reprimanded plaintiff.

11. After receiving the unwarranted reprimand, plaintiff met with Kevin Grimes, the assistant to Gaylord's Vice President of Human Resources, and Prescott Kerutis, Gaylord's Director of Human Resources, to complain about the unfair and she believed unlawful treatment she had received.

12. In or about October, 2007, plaintiff was required to take a medical leave from work because of post-traumatic stress disorder, depression, and anxiety related to her employment with defendant Gaylord. Pursuant to defendant Gaylord's leave policy, plaintiff was permitted up to 26 weeks of short term disability leave ("STD") and still be allowed to return to her position at Ristorante Volare.

13. Gaylord's employee's STD leave is managed by a third party, Unum.

14. In or about the beginning of October, 2007, plaintiff filed her first Charge of Discrimination (alleging discrimination on the basis of national origin, age and disability) with both the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission.

15. After plaintiff filed her Charge of Discrimination and while she was on medical leave in or about October 2007, plaintiff learned that she was being accused by defendant of "overcharging" a customer in the amount of $20.00 in or about September, 2007.

16. Plaintiff telephoned Michael Bennett, one of her food service managers to discuss the issue, and Mr. Bennett told plaintiff that it was not a concern and that she need not worry about it. Plaintiff also contacted Billie Ann Collins in defendant Gaylord's Human Resources department to discuss the issue, but Ms. Collins would not discuss the issue with plaintiff.

17. Plaintiff was medically released to return to work effective April 2, 2008.

18. Defendant Gaylord did not immediately place plaintiff back on the work schedule at Ristorante Volare because Collins and Scott Wallace required plaintiff to meet with them regarding the overcharge allegation and to sign a "Cash Handling Procedure-Return to Work Agreement." Plaintiff met with Collins and Wallace on April 7 and April 9, 2008. Plaintiff signed the Agreement on or about April 16, 2008.

19. Defendant Gaylord had never before required any other employee to sign a "Cash Handling Procedure-Return to Work Agreement" as a condition to return to work. Indeed, other servers at Ristorante Volare who did not suffer from a disability and who had not opposed, complained and engaged in other activity protected under Title VII such as filing a Charge of Discrimination were found to have overcharged customers and were not required to sign anything and were not even reprimanded.

20. Plaintiff learned from co-workers, not from any management employee, that she had been returned to the schedule and was to return to work on April 16, 2008. Plaintiff contacted restaurant management on April 16 to confirm that she was scheduled to work.

21. Plaintiff returned to work on April 16 and 17, 2008. Plaintiff worked her entire shift on April 16, 2008, without incident. On April 17, 2008, plaintiff was sent home by restaurant management and never placed back on the schedule.

22. Plaintiff repeatedly telephoned her Ristorante Volare managers to inquire about her schedule. No one from Ristorante Volare returned plaintiff's calls because Collins instructed Ristorante Volare's management employees to not communicate with plaintiff.

23. Rather than schedule plaintiff to work, defendant Gaylord contacted Unum and tried to have Unum return plaintiff back to STD so that defendant Gaylord could terminate plaintiff for exhausting her STD.

24. Plaintiff did not request or apply for a return to STD, and she was not advised by any health care provider to do so. Instead, plaintiff was fully capable of performing her job from April 2, 2008 until her discharge.

25. In an effort to achieve its goal of terminating plaintiff's employment, Jaye Sloan in defendant's Human Resources Department e-mailed Unum on May 19, 2008, stating: "This has been an ongoing case with a lot of issues and we are wanting her [plaintiff] to exhaust her STD so that we can terminate her according to the terms of our policy."

26. The very same day, Ms. Sloan sent a certified letter to plaintiff advising that defendant Gaylord had terminated her employment because she had exhausted her STD.

27. In or about May, 2008, plaintiff filed a second Charge of Discrimination with the THRC and EEOC.

28. After plaintiff filed her Charges of Discrimination and opposed defendant Gaylord's unlawful employment practices and actions, defendant Gaylord retaliated against plaintiff by harassing and intimidating her, refusing to schedule her to work and discharging her.

29. After plaintiff filed her Charges of Discrimination and opposed defendant Gaylord's unlawful employment practices and actions, defendant Gaylord retaliated against plaintiff by disciplining her for an alleged offense when it did not do so to others who committed the same or similar offences.

30. As a direct result of defendant Gaylord's actions, plaintiff has suffered damages.

31. As a result of its actions, defendant Gaylord is liable to plaintiff in an amount to be determined by the jury for the damages plaintiff has incurred.

32. As a result of its actions, defendant is liable for punitive damages and for plaintiff's attorney's fees.

33. As a result of its actions, defendant Gaylord is obligated to reinstate plaintiff to her employment and to make plaintiff whole for all lost earnings and benefits.

## COUNT I
### Claim for Retaliation in Violation of Title VII

34. Plaintiff hereby incorporates and realleges the factual averments as set forth in paragraphs 1 through 33 herein.

34. Defendant retaliated against plaintiff in the terms, conditions and privileges of her employment, including by harassing and intimidating plaintiff, wrongly disciplining plaintiff, refusing to schedule plaintiff to work and discharging her from her

employment because of her filing Charges of Discrimination and opposing defendant Gaylord's unlawful actions in violation of Title VII and the ADA.

35. As a result of its actions, defendant is liable to plaintiff in an amount to be determined by the jury for the damages plaintiff has incurred as well as for punitive damages.

36. As a result of its actions, defendant is liable for plaintiff's attorney's fees.

37. As a result of its actions, defendant is obligated to reinstate plaintiff and to make plaintiff whole for all lost earnings and benefits.

### COUNT II
### Claim for Violation of the Americans With Disabilities Act
### (Discrimination, Retaliation, and Failure to Accommodate)

38. Plaintiff hereby incorporates and realleges the factual averments as set forth in paragraphs 1 through 37 herein.

39. Plaintiff was an "employee" of defendant within the meaning of the ADA.

40. Defendant is an "employer" within the meaning of the ADA.

41. Plaintiff's post-traumatic stress disorder, anxiety, and depression are disabilities within the meaning of the ADA.

42. Defendant perceived or regarded plaintiff as having a disability within the meaning of the ADA.

43. Plaintiff is a "qualified individual with a disability" within the meaning of the ADA.

44. Defendant refused to allow plaintiff a reasonable accommodation without retaliating against her.

45. Plaintiff was capable of performing the essential functions of her job with or without a reasonable accommodation.

46. Defendant discriminated against plaintiff as a result of her disability or perceived disability by harassing and intimidating plaintiff, wrongly disciplining plaintiff, refusing to schedule plaintiff to work and discharging her from her employment.

47. Defendant retaliated against plaintiff for asserting her rights under the ADA.

48. The actions of defendant were in reckless indifference to plaintiff's rights.

49. As a result of its actions, defendant is liable to plaintiff in an amount to be determined by the jury for the damages plaintiff has incurred as well as for punitive damages.

50. As a result of its actions, defendant is liable for plaintiff's attorney's fees.

51. As a result of its actions, defendant is obligated to reinstate plaintiff and to make plaintiff whole for all lost earnings and benefits.

**WHEREFORE,** premises considered, plaintiff demands the following relief:

1. A jury trial and entry of judgment in her favor;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment and humiliation, emotional pain and suffering and mental anguish, stress and anxiety, inconvenience, and loss of enjoyment of life;

4. Punitive damages;

5. Attorney's fees and expenses;

6. Reinstatement or, alternatively, front pay and benefits;

7. Prejudgment interest and, if applicable, post judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

_____
Kerry E. Knox (TN BPR No. 23302)
117 South Academy Street
Murfreesboro, Tennessee 37130
(615) 896-1000

_____
Stephen W. Grace, (TN BPR No. 14867)
1019 16th Avenue, South
Nashville, Tennessee 37212
(615) 255-5225
Attorneys for Plaintiff